AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

FILED
SEP 1 6 2019
CLERK, US DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>2017 Ford F250 Super Cab Truck, VIN# 1FT7W2BT6HEE62982, FL Plate: L6EDW, Registered to JDI Truck Transport, Inc. | Case No. 2:19-sw-154 |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the ___Southern___ District of ___Florida___ is subject to forfeiture to the United States of America under ___18___ U.S.C. § ___982(a)(2)(A)___ *(describe the property)*:
and 18 U.S.C § 981(a)(1)(C).

2017 Ford F250 Super Cab Truck, VIN# 1FT7W2BT6HEE62982, FL Plate: L6EDW, Registered to JDI Truck Transport, Inc.

The application is based on these facts:

See attached Affidavit

☐ Continued on the attached sheet.

Reviewed by AUSA/SAUSA:
AUSA Elizabeth Yusi

*Applicant's signature*
Erik Gudmundsen, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9-16-19

City and state: Norfolk, Virginia

*Judge's signature*
Lawrence R. Leonard
**United States Magistrate Judge**
*Printed name and title*

FILED
SEP 16 2019

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

2:19sw 154
2:19sw

## AFFIDAVIT

I, Erik Gudmundsen, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since December 2017. I am currently assigned to work cyber and organized crime investigations to include major theft, money laundering, computer intrusions, Internet fraud, wire fraud, bank fraud, and financial institution fraud within the Norfolk, Virginia Division. My experience includes the investigation of cases involving the use of computers and the Internet to defraud, illegally access computers, and commit financial institution fraud. I have received law enforcement training in the investigation of criminal violations of federal law within the jurisdiction of the FBI, and have received specialized training in the investigation of computer-related crimes. Additionally, I have received training and gained experience in arrest procedures, search warrant applications, the execution of searches and seizures, and various other criminal laws and procedures. I have participated in the execution of search warrants, including those involving the search and seizure of computers and telephonic devices.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. I make this affidavit in support of an application for seizure warrants under 18 U.S.C. § 982(b)(1) with reference to 21 U.S.C. § 853(f), as well as pursuant to 18 U.S.C. § 981(b). The assets to be seized are the following (the SUBJECT VEHICLES):

ESG
LRL

      a. 2017 Ford F250 truck with VIN # 1FT7W2BT6HEE62982; and

      b. 2013 Porsche Panamera with VIN # WP0AA2A78DL013947.

The SUBJECT VEHICLES are forfeitable as bank fraud and bank fraud conspiracy proceeds, pursuant to 18 U.S.C. § 982(a)(2)(A) (criminal forfeiture) and 18 U.S.C. § 981(a)(1)(C) (civil forfeiture. I note that the SUBJECT VEHICLES are presently located in the Southern District of Florida. 18 U.S.C. § 981(b)(3) allows a Court in a district where a forfeiture action could be maintained to issue a seizure warrant for property located in another district.

    4. I have conducted an investigation of the offenses described in this affidavit. As a result of my investigation, a review of reports made by other law enforcement officers, and in speaking with other law enforcement officers who have been involved in the investigation, I am familiar with the circumstances of this on-going investigation. Because this affidavit is being submitted for the limited purpose of securing seizure warrants, I have not included each and every fact known to me concerning this investigation.

    5. The Norfolk Field Office of the Federal Bureau of Investigation and the Northampton County Sheriff's Office are investigating allegations that multiple, organized individuals are involved in placing skimming devices on gas pump card readers within the Eastern District of Virginia. Losses exceed at least $55,000, with attempted fraudulent transactions exceeding an additional $40,000 in the Eastern District of Virginia and elsewhere. Dozens of victims have been identified from eight states, including Virginia, Maryland, Georgia, New York, New Jersey, Minnesota, Pennsylvania, and North Carolina, with 13 of those victims located in the Eastern District of Virginia. As explained below, the investigation has revealed



that ARIEL MORA QUIJADA (QUIJADA), GRANJA QUIJADA YASMANI (YASMANI)[1], and others known and unknown, are involved in a conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, bank fraud, in violation of 18 U.S.C. § 1344, and aggravated identity theft, in violation of 18 U.S.C. § 1028A.

6. Based on the facts set out in this affidavit, there is probable cause to believe that QUIJADA, YASMANI, and others, have violated the statutes set forth in the paragraph above and that the SUBJECT VEHICLES constitute proceeds of the fraud conspiracy and bank fraud.

7. Through my own investigation and through members of the investigative team, I have learned the following facts:

## PROBABLE CAUSE

8. Beginning on or about April 23, 2018, multiple victims reported to the Northampton County Sheriff's Office their debit or credit cards (bank cards) were used to obtain cash fraudulently from two ATM locations. Investigation by the Northampton County Sheriff's Office revealed that all the victims had used their bank cards attached to their respective bank accounts at a Shore Stop gas station located at 22177 Lankford Highway in Cape Charles, Virginia, where skimming devices had been placed within two of the gas pumps on either April 19 or 20, 2018.

9. Cape Charles is within the Eastern District of Virginia.

10. Law enforcement physically retrieved the skimming devices used by the subjects on the gas pumps at the Shore Stop gas station. The skimming devices were capable of

---

[1] On June 27, 2019, QUIJADA, YASMANI and others were named in a criminal complaint signed by United States Magistrate Judge Douglas E. Miller for the Eastern District of Virginia (Norfolk Division).



wirelessly transmitting information captured from the bank cards, including the bank card number, PIN or access code, and bank account holder's name, to the subjects who placed the skimming devices and collected the information from the devices.

11.     Investigation revealed the subjects created fraudulent cards using the information stolen from the bank cards. The subjects used the fraudulent cards to obtain cash using multiple methods. The first method involved utilizing ATMs with a cloned bank card to request money. A second method involved loading prepaid Visa and Mastercards with funds available on the cloned bank card. A third method involved purchasing items in a store, and then requesting cash back after purchases were made. The latter two methods were frequently carried out in the self-checkout lines of grocery stores, where, based on my experience and in talking with other law enforcement officials familiar with these types of schemes, employees are less likely to scrutinize the subjects and their actions.

12.     There were multiple banks whose customers' bank cards and bank information were compromised by the skimming devices. These banks are insured by the FDIC and incurred numerous monetary losses based on the targets' use of the stolen bank card information and subsequent reimbursements to the victims. The affected banks include Woodforest Bank, SunTrust Bank, Union Bank and various federal credit unions.

13.     Investigation by the FBI and the Northampton County Sheriff's Office subsequently identified multiple members of an organized gang as being responsible for the criminal activity. The members (hereafter referred to as subjects or conspirators) were involved in the above-described scheme to steal the bank card information and then acquire funds through fraudulent means, and appeared to be working in concert with one another. Combinations of the same subjects enter and exit stores during the same approximate timeframes, but interact with



each other infrequently while in the stores. The subjects frequently use self-checkout stations next to each other in grocery stores. When at the self-checkout stations, the subjects are seen on surveillance video swiping multiple bank cards, and have been seen receiving cash dispensed at the self-checkout station. Some subjects in the group are also seen utilizing ATMs on surveillance video. The subjects have been known to target multiple Harris Teeter grocery stores in the Eastern District of Virginia and North Carolina in the same day. The subjects are captured on surveillance video in multiple locations during the timeframes when the stolen bank card information was utilized. The subjects sometime switch clothing, such as hats, presumably to change their appearance. The subjects have also been seen traveling together in vehicles identified as being used in furtherance of the criminal activity.

14.     On May 14, 2018, QUIJADA and another subject were arrested by the Mooresville, North Carolina Police Department after leaving the scene of a North Carolina Harris Teeter store. Another conspirator was arrested inside the same Harris Teeter while using an ATM. The three subjects were arrested in connection with attempting transactions using a cloned bank card, and all three subjects pleaded guilty to charges in North Carolina state court. QUIJADA pleaded guilty to Identity Theft.

### ARIEL MORA QUIJADA

15.     One of the conspirators, QUIJADA, appears on video surveillance in a number of locations where fraud has occurred. On May 14, 2018, ARIEL MORA QUIJADA is seen on video surveillance in Harris Teeter stores #179, #268, and #416 in North Carolina. In each store, he is wearing a baseball cap with a dark brim and front panel, and the remainder of the hat is white. In addition, he is wearing a dark blue, form fitting t-shirt, and dark pants. When he was arrested on May 14, 2018, ARIEL MORA QUIJADA was wearing a dark blue, form fitting t-



shirt, and dark pants. In addition to the three locations from May 14, 2018, ARIEL MORA QUIJADA is seen on video surveillance in four additional locations in Virginia and North Carolina between April 21, 2018, and May 8, 2018, including Harris Teeter Store #369 in Virginia Beach, Virginia, within the Eastern District of Virginia.

### GRANJA QUIJADA YASMANI

16. One of the conspirators, YASMANI, has been seen on video surveillance in a number of locations at the time where fraud has occurred. On April 21, 2018, GRANJA QUIJADA YASMANI is seen on video surveillance in Harris Teeter stores #51, #176, #369, and #378 in the Hamptons Roads area. In each store, he is wearing dark pants, a dark long sleeve shirt, and glasses that he frequently hangs from his shirt collar. In addition to these locations, GRANJA QUIJADA YASMANI is seen on video surveillance in six additional locations in Virginia, Maryland, and North Carolina between April 22, 2018, and May 14, 2018, including Harris Teeter stores #179 and #416 on May 14, 2018. Database searches revealed an identification photo for GRANJA QUIJADA YASMANI, who matches the subject seen in the surveillance footage.

17. Examples of the criminal transactions are the following:

| Date | Place / Time | Stolen Bank Card Account Used (last 4 digits)/Subject Using Card | Conspirators in Store |
|---|---|---|---|
| 4/21/2018 | Harris Teeter #369 Virginia Beach, VA<br><br>Purchases made between | • 0544, 6924 (YASMANI)<br>• 5741 (QUIJADA) | • GRANJA QUIJADA YASMANI<br>• ARIEL MORA QUIJADA<br>• OTHERS |



| | 12:00 PM – 12:30 PM | | |
|---|---|---|---|
| | Purchases | | |
| | | | |

- ARIEL MORA QUIJADA: Five transactions with $200 cash back in each transaction. Each cash back transaction included one item purchased, such as L'enfamil and a Lightning cable. One transaction purchasing a $500 Visa gift card.
- GRANJA QUIJADA YASMANI: Split transaction with two cards, purchasing a $500 Mastercard gift card.

| Date | Place / Time | Stolen Bank Card Account Used (last 4 digits)/Subject Using Card | Conspirators in Store |
|---|---|---|---|
| 5/14/2018 | Harris Teeter #416 Cornelius, NC<br><br>Purchases made between 3:02 PM – 3:14 PM | • 5560, 2919 (YASMANI) | • GRANJA QUIJADA YASMANI<br>• OTHERS |
| | Purchases | | |

- GRANJA QUIJADA YASMANI: One transaction with $200 cash back and one item purchased, a cup. Four transactions purchasing $500 Mastercard gift cards.

7



| Date | Place / Time | Stolen Card Account Used (last 4 digits) | Conspirators in Store |
|---|---|---|---|
| 4/21/2018 | Harris Teeter #350 Virginia Beach, VA<br><br>Purchases made between 12:33 PM – 12:41 PM | • 2045 (QUIJADA) | • ARIEL MORA QUIJADA<br>• OTHERS |
| Purchases | | | |
| • ARIEL MORA QUIJADA: Two transactions purchasing one item, L'enfamil. | | | |

| Date | Place / Time | Stolen Card Account Used (last 4 digits) | Conspirators in Store |
|---|---|---|---|
| 5/8/2018 | Harris Teeter #274 Mooresville, NC<br><br>Purchases made between 5:25 PM – 5:34 PM | • 6110 (QUIJADA) | • ARIEL MORA QUIJADA<br>• OTHERS |
| Purchases | | | |
| • ARIEL MORA QUIJADA: One transaction with $200 cash back, with the purchase of a notebook. Four successful transactions purchasing a $500 Mastercard gift card. One gift card purchase also included a notebook. A final cancelled transaction included another $500 Mastercard gift card. | | | |

18. In addition to the above information, law enforcement has identified that each subject's cellular phone was in the vicinity of at least one of the stores/ATM machines during the time period of the criminal activity.

8

ESG
LRL

19. QUIJADA is currently on probation for Identity Theft in Florida, and does not have any reported wages in Florida. On August 27, 2019, he was arrested pursuant to a warrant from this Court (see fn. 1 *infra*). During an interview, he admitted to his role in the criminal scheme.

20. YASMANI was convicted of felony theft in 2016, receiving stolen property in 2016, fraudulent use of a credit card in 2016, falsely embossing or altering a credit card in 2016, and driving while license suspended or revoked in 2018. From the fourth quarter of 2008 to the third quarter of 2013, it was reported that YASMANI earned a total of $159,510.05 from Magnum Construction Management Corp. in South Miami, Florida. YASMANI shows no reported income thereafter.

21. After learning of QUIJADA and others' arrests during the week of August 26, 2019, YASMANI fled the Southern District of Florida and is now believed to be out of the country.

22. YASMANI's mother, IRIS FLORENTI QUIJADA LINARES (LINARES), worked for McDonalds Restaurants of Florida, Inc. from the second quarter of 2014 to the third quarter of 2014, though no earnings are available. LINARES earned $16,748.04 from the first quarter of 2017, to the 4th quarter of 2018, working for Burlington Coat Factory Warehouse Corporation, 1830 N route 130, Burlington, NJ 08016-3017. LINARES shows no reported income thereafter.

23. YASMANI and LINARES, under the company JDI TRUCK TRANSPORT, INC. (JDI), purchased a 2017 Ford F250 truck, VIN # 1FT7W2BT6HEE62982, on May 16, 2019, for an unknown amount. The NADA value is approximately $38,800. Speaking with YASMANI's wife, THALIA BRITO BRIZUELA, JDI is an old business that is no longer operating. The



address listed for JDI is a residential address where conspirator ARIEL MORA QUIJADA lives. After speaking with LINARES, it was determined that the vehicle does not have a lien, and LINARES could not identify how the vehicle had been purchased.

24. LINARES purchased a 2013 Porsche Panamera, VIN # WP0AA2A78DL013947, on August 27, 2019, for an unknown amount. The NADA value is approximately $19,500. After speaking on the phone with LINARES, it was determined that the Porsche does not have a lien, and LINARES could not identify how the vehicle had been purchased.

25. The United States Marshals Service seized the SUBJECT VEHICLES on August 28, 2019.

## CONCLUSION

26. Based on the facts contained herein, combined with the training and experience of the investigative team, I conclude that there is probable cause to believe that YASMANI purchased the SUBJECT VEHICLES with fraud proceeds, specifically the proceeds of a conspiracy to commit bank fraud and bank fraud. The SUBJECT VEHICLES are therefore subject to seizure and forfeiture pursuant to the statutory authority set forth in paragraph 3 of this affidavit.

27. Given the nature of vehicles and boats, they are more easily hidden, moved, and damaged than most property. I am told that the U.S. Attorney's Office has had instances of defendants hiding and damaging their restrained cars over the course of the last five years, resulting in a substantial drop in the value of those items. I therefore submit that a restraining order would not suffice to preserve the SUBJECT VEHICLES for forfeiture.


ESG
LRL

FURTHER AFFIANT SAYETH NOT.

Respectfully submitted,

_____
Erik Gudmundsen
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on September 1̸2̸, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

11

ESG